IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
KENT D. McCARTER,              )
                               )
            Plaintiff,         )
                               )
vs.                            )    Case No. 06-1266-MLB
                               )
MICHAEL J. ASTRUE,[1]          )
Commissioner of                )
Social Security,               )
                               )
            Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

Administrative law judge (ALJ) Michael R. Dayton issued his

decision on March 31, 2006 (R. at 12-20).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time relevant to this decision (R. at 14).  At step two, the ALJ found that plaintiff had the following severe impairments: legally blind in the right eye with some blurriness of the left eye, status-post possible stroke or transient ischemic attack with some left side weakness and left arm pain etiology not clear (R. at 14).  At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 17).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could not perform past relevant work (R. at 19).  At step five, the ALJ found that plaintiff could perform other work in the national economy that exists in significant numbers; therefore the ALJ concluded that plaintiff was not disabled (R. at 19-20).

**III.  Did the ALJ err in his finding at step three that plaintiff's impairments do not meet or equal listed impairment 11.04(B)?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley,

5

493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. <u>Caviness v. Apfel</u>, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three. This court should not properly engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. The ALJ must discuss uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

Plaintiff argues that his impairments meet or equal listed impairment 11.04(B). It is as follows:

> *Central nervous system vascular accident.*
> With one of the following more than 3 months post-vascular accident:
>
> ...
>
> B. Significant and persistent disorganization of motor function in two extremities,

>    resulting in sustained disturbance of gross
>    and dexterous movements, or gait and station
>    (see 11.00C).
>
>    11.00C. *Persistent disorganization of motor
>    function* in the form of paresis or paralysis,
>    tremor or other involuntary movements, ataxia
>    and sensory disturbances (any or all of which
>    may be due to cerebral cerebellar, brain
>    stem, spinal cord, or peripheral nerve
>    dysfunction) which occur singly or in various
>    combinations, frequently provides the sole or
>    partial basis for decision in cases of
>    neurological impairment. The assessment of
>    impairment depends on the degree of
>    interference with locomotion and/or
>    interference with the use of fingers, hands,
>    and arms.

20 C.F.R. Pt. 404, Subpt. P., App. 1 (2006 at 481, 480).

   The ALJ's findings on this issue are as follows:

>    The record indicates a possible central
>    nervous system vascular accident without
>    definite objective testing. Although the
>    claimant complains of left side weakness and
>    left side arm pain, he does not have
>    significant and persistent disorganization of
>    motor function as required by medical listing
>    11.04. His daily limitations are not
>    significantly limited. He walks for
>    recreation and reported at the hearing that
>    he is able to lift a 20 pound bag of dog food
>    with his left hand.

(R. at 17).

   Plaintiff points to an undated medical report by Dr. Landers,[2] which states the following:

>    Kent McCarter sustained a central nervous
>    system vascular accident on 1/18/03. This

---

[2]Although undated, the ALJ, in his decision, stated that this report was faxed on February 14, 2006 (R. at 16).

7

> office, in connection with other healthcare providers, has managed Mr. McCarter's care since that date.
>
> Since the date of Mr. McCarter's CVA, Mr. McCarter's motor function has been significantly and persistently impacted. Since the date of his CVA, Mr. McCarter has had serious issues involving his balance. Specifically, he easily loses his balance when standing and is unsteady and off-balance when he ambulates. Mr. McCarter falls several times during the course of a week due to said ataxia. He loses his balance when he moves from a sitting to standing position and when he attempts to ambulate from one place to another. His ability to bend, climb stairs and reach above his shoulder have, likewise, been severely and negatively impacted by his ataxia.
>
> Further, since the date of Mr. McCarter's CVA, Mr. McCarter has experienced a significant loss in his gross bimanual dexterity and fine motor skills. He is unable to touch his finger to his nose when prompted to do so. His ability to perform simple grasps, fine manipulation, and power grips have been severely impacted by his loss of depth perception, balance and weakness resulting from his CVA.

(R. at 398).

The ALJ's only mention of this medical report was to indicate that the report stated that "the claimant has problems with balance, gross and fine motor skills" (R. at 16). The ALJ did not discuss this medical report in conjunction with his finding that listed impairment 11.04(B) is not met.

Listed impairment 11.04(B) requires a showing of significant and persistent disorganization of motor function in two

extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.  Dr. Landers' report states that plaintiff's motor function has been "significantly and persistently impacted," noting serious issues involving loss of balance when standing, walking, or when attempting to stand from a seated position; Dr. Landers further noted a significant loss in gross bimanual dexterity and fine motor skills (R. at 398).  Dr. Landers' indication of plaintiff's motor function being "significantly and persistently" impacted mirrors the language of listed impairment 11.04(B).

Plaintiff has a duty to provide medical evidence to establish that he meets or equals listed impairment 11.04(B). Plaintiff has provided evidence which, on its face, could be deemed to meet the requirements of the listed impairment. Significantly, even the defendant, in his brief, stated the following:

> **Although Plaintiff has presented opinion evidence from Dr. Landers that would appear to meet the requirements of the listing**, that opinion is premised upon the assumption that Plaintiff suffered a cardiovascular accident, which the objective testing shows he did not.

(Doc. 12 at 5, emphasis added).  Defendant also argued that Dr. Landers was not plaintiff's treating physician, and that his opinion is inconsistent with plaintiff's daily activities (Doc. 12 at 5).

It is clear that the ALJ failed to discuss this medical

opinion evidence when finding that plaintiff's impairments did not meet or equal 11.04(B). This court should not weigh the evidence, but should simply review the Commissioner's decision to be sure that his findings are supported by the evidence. When the ALJ has failed to weigh relevant medical evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that plaintiff did not meet or equal listed impairment 11.04(B). See Clifton, 79 F.3d at 1009. An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005). Furthermore, the court may not weigh the evidence in the first instance. Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998). Because the ALJ failed to evaluate and make a determination of the weight that should be accorded to the medical opinions of Dr. Landers, and given the clear relevance of his medical opinions to the criteria of 11.04(B), this case must be remanded in order for the ALJ to

properly consider this evidence when making a determination of whether plaintiff's impairment meets or equals listed impairment 11.04(B).

As noted above, the defendant offers other arguments for finding that plaintiff's impairments do not meet or equal listed impairment 11.04(B) (i.e., objective testing shows plaintiff did not suffer a cardiovascular accident, Dr. Landers was not plaintiff's treating physician, his opinion is inconsistent with plaintiff's daily activities). However, the ALJ himself acknowledged that the record indicated a possible central nervous system vascular accident without definite objective testing. The ALJ did not find that the criterion of a central nervous system vascular accident was not met in this case. Although this medical opinion was not mentioned by the ALJ, it should also be noted that Dr. Landers stated that plaintiff sustained a central nervous system vascular accident on January 18, 2003 (R. at 398).

Furthermore, the ALJ never made a finding that Dr. Landers was not plaintiff's treating physician. The only reference to this subject by the ALJ was to note plaintiff's testimony that "Dr. Landers sometimes covers for Dr. Sager who is his family doctor" (R. at 16). The ALJ failed to fully and accurately discuss the opinions of Dr. Landers that plaintiff's motor function was significantly and persistently impacted, and that he had a significant loss in his gross bimanual dexterity and fine

motor skills.[3]  The ALJ also failed to discuss whether these opinions were consistent or inconsistent with other evidence, including plaintiff's daily activities.  An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).  Because these arguments were not contained in the ALJ's decision, they will not be considered by the court.

**IV.  Did the ALJ err in his RFC findings?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical

---

[3] The only reference by the ALJ to Dr. Landers' report was to state that the plaintiff has "problems" with balance, gross and fine motor skills (R. at 16), and the ALJ never mentioned the report of Dr. Landers when making his findings at step three.

evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In his decision, the ALJ found that plaintiff can stand or walk about 6 hours in an 8 hour day. The ALJ did not find that plaintiff was limited in gross bimanual dexterity or fine motor skills. However, the ALJ failed to discuss what weight, if any, he gave to the opinions of Dr. Landers. Dr. Landers stated that plaintiff easily loses his balance when standing and is unsteady and off-balance when he walks, falls several times a day, and loses his balance when he moves from a sitting to a standing position and when he attempts to walk from one place to another. Dr. Landers also stated that plaintiff experienced a significant loss of gross bimanual dexterity and fine motor skills. The ALJ clearly erred by failing to consider and address Dr. Landers' opinions when making his RFC findings. Therefore, on remand, the opinions of Dr. Landers should be considered by the ALJ when

making RFC findings for the plaintiff.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 8, 2007.

                                            s/John Thomas Reid
                                            JOHN THOMAS REID
                                            United States Magistrate Judge