IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KENT D. MCCARTER,                    )
                                     )
                    Plaintiff,       )     **CIVIL ACTION**
                                     )
v.                                   )     No.  06-1266-MLB
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
                    Defendant.       )
_____)

<u>**MEMORANDUM AND ORDER**</u>

**1.   INTRODUCTION**

    Before the court are the following:

    (1)  United States Magistrate Judge John Thomas Reid's
         Recommendation and Report (Doc. 13); and

    (2)  Defendant's objections (Doc. 14).

    Magistrate Judge Reid's May 8, 2007, Recommendation and Report
recommends that this case be reversed and remanded, pursuant to
sentence four of 42 U.S.C. § 405(g).  Defendant objects to Magistrate
Reid's determination that the ALJ failed to adequately consider the
opinion of Dr. Landers.  (Doc. 13 at 11-13).  After reviewing the
appropriate portions of the administrative record as well as the
briefs submitted to Magistrate Judge Reid, the court adopts the
Recommendation and Report.  The decision of the Commissioner is
reversed and remanded.

**II.  STANDARDS OF REVIEW**

    The standards this court must employ upon review of defendant's
objection to the Recommendation and Report are clear.  <u>See generally</u>
28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  First, only those portions

of the Recommendation and Report defendant specifically identified as objectionable will be reviewed.  See Gettings v. McKune, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000).  Second, review of the identified portions is de novo.  Thus, the Recommendation and Report is given no presumptive weight.  See Griego v. Padilla, 64 F.3d 580, 583-84 (10th Cir. 1995).

The ALJ's decision is binding on the court if supported by substantial evidence.  See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987).  The court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards.  See Castellano v. Sec'y of Health and Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994).  While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (interpreting "substantial evidence" as found in the original form of section 10(e) of the NLRA)).  "Evidence is not substantial 'if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'"  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

**III. ANALYSIS**

Plaintiff seeks disability insurance benefits and supplemental security income payments and thus bears the burden of proving a disability within the meaning of the Social Security Act.  See Madrid

-2-

v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006).  The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A) (2000).  The Act further provides that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) (2000).

To determine whether plaintiff is disabled, the Commissioner applies a five-step sequential evaluation: (1) whether plaintiff is currently engaged in substantial gainful activity, (2) whether he suffers from a severe impairment or combination of impairments, (3) whether the impairment is equivalent to a listed impairment (4) whether plaintiff's RFC prevents him from continuing past relevant work, and (5) whether plaintiff has the RFC to perform other work. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  "If a determination can be made at any of the steps that claimant is or is not disabled, evaluation under a subsequent step is not necessary." Lax v. Astrue, --- F.3d ---, 2007 WL 1620513 (10th Cir. June 6, 2007).

Magistrate Judge Reid determined that the ALJ failed at steps three and four because he did not consider Dr. Landers' medical opinion when finding that plaintiff's impairments did not meet or equal 11.04(B) or in determining plaintiff's RFC.  Defendant asserts that the ALJ's treatment of the evidence does not rise to the level of legal error and that the opinion does not detract from the

-3-

substantial evidence supporting the ALJ's decision.   (Doc. 14 at 2).

<u>Step Three</u>

At step three, the ALJ must determine whether plaintiff's impairments meet or exceed the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 13).   The ALJ determined that plaintiff had the following severe impairments: "legally blind in the right eye with some blurriness of the left eye, status-post possible stroke or transient ischemic attack with some left side weakness and left arm pain etiology not clear (20 CFR 404.1520(c)).  Non-severe impairments include a history of depression and adjustment disorder as noted below." (R. at 14).   The ALJ concluded that plaintiff did not have a listed impairment.[1]

> Visual acuity is count fingers 3 feet on the right and 20/40+ on the left with some limited field of vision. However, he does not have visual limitations as required by

---

[1] The listed impairments at 11.04(B) are as follows:

Central nervous system vascular accident.
With one of the following more than 3 months post-vascular accident:
...
B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross
and dexterous movements, or gait and station (see 11.00C).

11.00C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia
and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P., App. 1 (2006 at 481, 480).

medical listing 2.02-2.04. The claimant has a driver's license and reports the ability to drive during the day noting that he avoids night time driving because the lights bother him. He has not reported any other limitation with his vision noting that he is able to read, watch television, do wood crafts and computer work. The record indicates a possible central nervous system vascular accident without definite objective testing. Although the claimant complains of left side weakness and left side arm pain, he does not have significant and persistent disorganization of motor function as required by medical listing 11.04. His daily limitations are not significantly limited. He walks for recreation and reported at the hearing that he is able to lift a 20 pound bag of dog food with his left hand.

(R. at 17).

Plaintiff asserts that the ALJ's finding at step three is erroneous since Dr. Landers' opinion characterizes his impairments as meeting or exceeding the listed impairments. An undated medical note by Dr. Landers states the following:[2]

> Kent McCarter sustained a central nervous system vascular accident on 1/18/03. This office, in connection with other healthcare providers, has managed Mr. McCarter's care since that date.
> Since the date of Mr. McCarter's CVA, Mr. McCarter's motor function has been significantly and persistently impacted. Since the date of his CVA, Mr. McCarter has had serious issues involving his balance. Specifically, he easily loses his balance when standing and is unsteady and off-balance when he ambulates. Mr. McCarter falls several times during the course of a week due to said ataxia. He loses his balance when he moves from a sitting to standing position and when he attempts to ambulate from one place to another. His ability to bend, climb stairs and reach above his shoulder have, likewise, been severely and negatively impacted by his ataxia.
> Further, since the date of Mr. McCarter's CVA, Mr. McCarter has experienced a significant loss in his gross bimanual dexterity and fine motor skills. He is unable to touch his finger to his nose when prompted to do so. His ability to perform simple grasps, fine manipulation, and power grips have been severely impacted by his loss of depth perception, balance and weakness resulting from his

---

[2] Although undated, the opinion by the ALJ states that the report was faxed on February 14, 2006. (R. at 16).

-5-

CVA.

(R. at 398).

Defendant acknowledges that Dr. Landers' letter presents "opinion evidence . . . that would appear to meet the requirements of the listing. . ." Defendant goes on to argue that Dr. Landers' ". . . opinion is premised on the assumption that plaintiff suffered a cardiovascular accident, which the objective testimony shows he did not." (Doc. 12 at 5). The Landers' letter states that plaintiff "sustained a central nervous system vascular accident," not a cardiovascular accident. While testing did not positively confirm that plaintiff suffered either a CVA or a TIA, it did not positively rule out either one. The ALJ acknowledged as much by noting that one of plaintiff's impairments is "status-post possible stroke or transient ischemic attack . . ." (R. at 17). Therefore, Landers' "assumption" is simply one medical opinion which has some support in the record.

Thus, although Dr. Landers' opinion seemingly describes plaintiff's impairments as meeting or exceeding the listed impairments, the ALJ only referenced Dr. Landers' opinion as stating that plaintiff "has problems with balance, gross and fine motor skills." (R. at 16). The ALJ concluded that plaintiff had a possible central nervous system vascular accident and does not have significant and persistent disorganization. (R. at 17). This conclusion is in conflict with Dr. Landers' opinion and the ALJ fails to offer an explanation as to why he discredited Dr. Landers' opinion.

Defendant asserts that the ALJ's opinion nevertheless must be upheld because substantial evidence exists to support the opinion.

-6-

However, when the ALJ has failed to weigh relevant medical evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's findings. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ must discuss uncontroverted medical evidence that he chose not to rely on, as well as significantly probative evidence that was rejected. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1266 (10th Cir. 2000). The ALJ failed to do so. Contrary to defendant's characterization, the legal principles announced in these cases, and upon which Judge Reid relied, do not amount to "post hoc rationalizations." (Doc. 14 at 7). The ALJ did not "adequately consider" Landers' opinion unless the ten words he used in passing amount to "adequate consideration." It does not.

### Step Four

Defendant further objects to Magistrate Reid's determination that the ALJ erred in determining plaintiff's RFC. Plaintiff's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." <u>See</u> S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In determining plaintiff's RFC, the ALJ must identify plaintiff's functional limitations and then assess his work-related abilities on a function-by-function basis. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Id.</u> at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." <u>Id.</u>

The ALJ determined that plaintiff has the residual functional capacity for standing or walking 6 hours in an 8 hour work day.  (R. at 17).  This opinion, again, conflicts with Dr. Landers' opinion that plaintiff has severe balance problems and frequently loses his balance.   In determining plaintiff's RFC, the ALJ is required to explain how material inconsistencies were considered and resolved.  See S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ's opinion has not explained the inconsistencies with his findings and Dr. Landers' opinion.

**III. CONCLUSION**

The court adopts the Recommendation and Report of the Magistrate Judge for the reasons set forth therein.   It may well be that upon remand, the ALJ will reach the same conclusion.  Nevertheless, S.S.R. 96-2p and 96-8p are defendant's requirements and ALJs presumably are the experts whose responsibility it is to know and follow defendant's requirements.[3]  The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings to address the magistrate judge's and this court's concerns expressed herein.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions

---

[3]  On pages 10 and 11 of his objections, defendant appears to be contending that this court should give the ALJ a "break." ("Unlike reviewing courts and appellate counsel, Social Security ALJs do not have the time or resources necessary to draft an all-encompassing decision. . .") This court is cognizant of the large caseloads of Social Security ALJs but this does not justify or excuse an ALJ's failure to explain his or her decision as required by relevant Tenth Circuit decisions.  In this case, a more detailed statement by the ALJ regarding how he viewed Dr. Landers' opinion would have made all the difference in terms of Judge Reid's and this court's review.  Indeed, it is quite possible that it would have obviated the necessity of a remand.

to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.


IT IS SO ORDERED.

Dated this   12th   day of July 2007, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-9-